Aᴍᴇʀɪᴄᴀɴ Eᴄᴏɴᴏᴍʏ Iɴsᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ et al., Appellants, v Sᴛᴀᴛᴇ ᴏғ Nᴇᴡ Yᴏʀᴋ et al., Respondents.

First Department, April 14, 2016

**APPEARANCES OF COUNSEL**

*Greenberg Traurig, LLP*, Albany (*Cynthia Neidl* of counsel), for appellants.

*Eric T. Schneiderman, Attorney General*, New York City (*Claude S. Platton* and *Steven C. Wu* of counsel), for respondents.

*Law Office of Peter O'Connell*, Albany (*Peter B. O'Connell* of counsel), for Empire State Towing and Recovery Association, Inc., and another amici curiae.

**OPINION OF THE COURT**

SAXE, J.

Plaintiffs are private insurance companies that underwrite workers' compensation insurance policies in New York. In this action, they challenge the validity and constitutionality of a 2013 amendment to Workers' Compensation Law § 25-a to the extent it imposes liability on them with respect to policies issued before October 1, 2013. We hold that the challenged provision impermissibly imposes on plaintiffs significant additional liability retroactively with respect to those past contracts, and that they are entitled to judgment in their favor.

In 1933, the legislature added to the Workers' Compensation Law a provision establishing a special fund for the payment of workers' compensation benefits to employees whose cases were closed and later reopened (the reopened case fund or the Fund) (see Workers' Compensation Law § 25-a, as added by L 1933, ch 384, § 2). The "statutory scheme contemplate[d] that the Special Fund [would] step into the shoes of the insurance carrier and succeed to its rights and responsibilities" (Matter of De Mayo v Rensselaer Polytech Inst., 74 NY2d 459, 462-463 [1989]). The reopened case fund was initially financed by one-time charges imposed on employers or insurers for every case of injury or death, until in 1948 the Workers' Compensation Board was authorized to collect annual assessments from workers' compensation insurers as needed to maintain the Fund at a prescribed minimum balance (Workers' Compensation Law § 25-a [3]).

Plaintiffs explain that the existence of the Fund meant that reopened workers' compensation claims were not included when insurers' premium rates were calculated by the New York Compensation Insurance Rating Board (CIRB) and approved by the New York State Department of Financial Services (DFS). They also assert that because reopened claims were handled and paid by the reopened case fund rather than by insurers, insurers did not maintain reserves to cover future reopened claim losses. Defendants do not disagree, except to the extent they assert that it was only once a reopened claim was actually transferred to the Fund that the claims were left off the calculation of rates chargeable to the insureds; they say that "prior to such transfer, the carrier is responsible for making payments on the claim, and the costs associated therewith are reported to CIRB for the purposes of allowing the costs to be factored into the rates which the carriers are permitted to charge their employer insureds."

On March 29, 2013, the legislature enacted a number of reforms to the Workers' Compensation Law as part of a "Business Relief Bill" contained in the 2013-2014 New York State Executive Budget. These reforms, presented as money-saving changes, included the challenged amendment to the Workers' Compensation Law, which closed the reopened case fund to newly reopened claims as of January 1, 2014 (see Workers' Compensation Law § 25-a [1-a]; L 2013, ch 57 § 1, part GG, § 13, enacting NY Senate Bill S2607D). Any reopened claims that would have been transferred to the Fund under the former law would become the obligation of the carrier.

In a memorandum in support of the Governor's 2013-2014 New York State Executive Budget, with regard to the portion of the "Business Relief Bill" that concerned the reopened case fund, it was suggested that the Fund was not needed "because the premiums [the insurers] have charged already covers this liability" (see Mem in Support of 2013-14 New York State Executive Budget, Public Protection and General Government Article VII Legislation, at 29, https://www.budget.ny.gov/pubs/archive/fy1314archive/eBudget1314/fy1314artVIIbills/PPGG_ArticleVII_MS.pdf [accessed Mar. 28, 2016]). The memorandum went on to characterize the Fund as creating a windfall for insurers.

In this declaratory judgment action, plaintiffs dispute the foregoing characterization of the Fund contained in that memorandum (i.e., that the premiums they charged already covered liability for reopened cases). Rather, they point out, with respect to those workers' compensation policies that were issued before October 1, 2013, the premiums they charged to employers, as authorized by DFS, would not have been calculated to cover liability for future reopened claims, since at that time such claims were expected to be subject to transfer to the Fund for payment. In contrast, for policies written on or after October 1, 2013, DFS approved an increase in premiums to address the additional liability resulting from the closure of the Fund to future reopened cases; however, that premium increase would not cover policies issued before October 1, 2013. Yet, because these policies are occurrence-based, meaning that they provide coverage for accidents that occur during the policy term regardless of when the claim is made, a benefit payable on a reopened claim made after January 1, 2014 but arising out of an accident that occurred before October 1, 2013, will impose on the insurer a liability that was not contemplated

when the premium for the pre-October 1, 2013 policy was calculated.

Thus, plaintiffs assert, Workers' Compensation Law § 25-a (1-a) improperly shifts liability to insurers for claims reopened after January 1, 2014 involving injuries that occurred before October 1, 2013, although such claims were not included in the calculations of either the premium rates they charged for those policies or the reserves they maintained in order to pay claims. They argue that the amendment imposes on them unfunded liability for claims in reopened cases that arise from accidents or injuries that occurred before October 1, 2013, since premium rates are prospective in nature and the insurers cannot recoup the costs of this added liability, which they estimate at $62 million.

In moving to dismiss and for a declaration in their favor, defendants argue that the Fund's closure to new applications merely altered the handling of cases that reopen after January 1, 2014, and did not have any impermissible retroactive effect. Plaintiffs cross-moved for summary judgment and a declaration in their favor.

The motion court granted defendants' motion, holding that the statute does not have an improper retroactive effect; in response to plaintiffs' argument regarding the imposition of new liabilities not contemplated when their authorized premiums were calculated, the court reasoned that the statute only governs benefits awarded after its passage, and "[t]he fact that the benefits [for reopened claims relating to injuries occurring before October 1, 2013] may relate to an injury that occurred prior to the enactment of § 25-a (1-a) does not render it retroactive" (citing *Matter of Raynor v Landmark Chrysler*, 18 NY3d 48 [2011]).

Discussion

"It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584 [1998], citing *Jacobus v Colgate*, 217 NY 235, 240 [1916, Cardozo, J.], *Landgraf v USI Film Products*, 511 US 244, 265 [1994]). "[T]he date that legislation is to take effect is a separate question from whether the statute should apply to claims and rights then in existence" (*Majewski*, 91 NY2d at 583).

The question of whether the new statute would have a retroactive effect requires the court to consider "whether it

would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" (*Landgraf v USI Film Products*, 511 US at 280). "[This] ban on retrospective legislation embrace[s] all statutes, which, though operating only from their passage, affect vested rights and past transactions," and thus "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation . . . in respect to transactions or considerations already past, must be deemed retrospective" (*id.* at 268-269 [internal quotation marks omitted]). "[T]he court must ask whether the new provision attaches new legal consequences to events completed before its enactment" (*id.* at 269-270).

Therefore, the central question here is whether closing the Fund to new applications and requiring the insurers to handle and pay on reopened claims arising out of accidents that occurred before October 1, 2013 impermissibly "attache[d] new legal consequences to events completed before its enactment" (*id.* at 270).

In concluding that the challenged statutory provision did not take away or impair vested rights, the motion court failed to treat the allegations in the complaint as true and afford plaintiffs all favorable inferences. It is essentially undisputed that the premiums charged for policies prior to October 1, 2013 took into account the transfer to the Fund of reopened claims under the former Workers' Compensation Law § 25-a, and thus, did not account for potential future liability relating to such claims, which were expected to qualify for a transfer to the Fund. The Fund's closure failed to provide for the unfunded liability it imposes on plaintiffs for reopened cases arising from accidents occurring before October 1, 2013 that would have otherwise qualified for transfer under Workers' Compensation Law § 25-a, and they cannot make up this shortfall. "Thus, even though the [statute] mandates only the payment of future . . . benefits, it nonetheless 'attaches new legal consequences to [a relationship] completed before its enactment' " (*Eastern Enterprises v Apfel*, 524 US 498, 532 [1998], quoting *Landgraf v USI Film Products*, 511 US at 270).

The motion court's reliance on *Matter of Raynor v Landmark Chrysler* (18 NY3d 48 [2011]) was misplaced. There, the Court considered an insurance carrier's challenge to the requirement that, pursuant to a 2007 amendment to Workers' Compensation Law § 27 (2) (*see* L 2007, ch 6, § 46), it deposit into the Ag-

gregate Trust Fund (ATF) the full present value of a lifetime permanent partial disability award for a 2004 injury (*id.* at 54-55). The Court rejected the carrier's argument that this application of the 2007 amendment was improperly retroactive (*id.* at 55). Observing that the carrier had always been liable for the full amount of the permanent partial disability award, and, moreover, that even before that amendment, the Workers' Compensation Board already had the discretion to require a carrier to deposit the present value of such an award into the ATF (*see id.* at 54, 57), the Court explained that this application of the 2007 amendment to Workers' Compensation Law § 27 (2) "neither altered the carrier's preexisting liability nor imposed a wholly unexpected new procedure. It merely changed the time and manner of payments" (*id.* at 57). Those circumstances fundamentally distinguish *Raynor* from the present case, where the challenged amendment to the statute, as applied to injuries occurring before October 1, 2013, actually "altered the carrier's preexisting liability" (*id.*), imposing on plaintiffs substantial new retroactive liability that have not and cannot be offset by premium increases.

Defendants characterize the challenged amendment as a mere "allocation of economic benefits and burdens [that] has always been subject to adjustment," as in *Becker v Huss Co.* (43 NY2d 527, 541 [1978]). *Becker* considered an amendment to Workers' Compensation Law § 29 applicable to workers' compensation carriers, which already had a lien on any recovery obtained in litigation brought by the compensation-claimant against a third party (*id.* at 538). The amendment imposed on carriers a requirement that they contribute to the expenses of that litigation from which they benefitted (*id.* at 539). The State Insurance Fund (SIF), as a workers' compensation lienor, challenged the amendment insofar as it applied to litigation then pending, involving accidents before the effective date of the amendment; the SIF argued that such retroactive application would "creat[e] a new set of rights, . . . upset[ting] the cost-price balance on which it operated and impair[ing] its section 29 liens" (*id.*). The Court recognized that the amendment "saddl[ed] [the carriers] with financial obligations not contemplated when prior insurance premiums had been computed" (*id.* at 540), but rejected the SIF's claim that the amendment had an improper retroactive impact. It explained that "[t]he amendment at issue, presaged for some years, is just another adjustment in the allocation of

the financial benefits and burdens," and, importantly, that it "neither created a new right *nor impaired an existing one*" (*id.* at 542 [emphasis added]). In particular, the Court observed that "[t]he carrier always benefited from the third-party action; the amendment simply requires it to bear the cost of that benefit" (*id.*).

Unlike the SIF in *Becker*, which retained the benefit of recouping its compensation payments by acting as a lienor in the compensation-claimant's third-party action, and was simply made to cover costs incurred in obtaining that benefit, the closure of the Fund here, by ending plaintiffs' right to transfer eligible cases to the Fund, retroactively deprived them of the entirety of the benefit of this right and created a new class of unfunded liability.

There have been circumstances in which a legislature has clearly indicated a considered determination to retroactively affect an entity's rights or liabilities by a new statutory enactment, and in such circumstances even such incontrovertible retroactive impacts may be permissible. For that reason, defendants' reliance on *Matter of Hogan v Lawlor & Cavanaugh Co.* (286 App Div 600, 604 [3d Dept 1955]) is misplaced. There, in rejecting the argument of a workers' compensation carrier that the challenged statute impermissibly, retroactively "impose[d] liability upon the carrier [where] . . . the insurance premiums collected by it from its insured had been based upon liability of a less burdensome character," the Court explained that the legislature had clearly considered and intended to increase the carriers' burden in pending compensation cases such as the one at issue in *Hogan* (*id.*).

Here, in contrast, the record fails to reflect that the legislature amended the statute with an understanding of the impact it would have on policies issued before October 1, 2013. Indeed, the memorandum in support of the Business Relief Bill reflects the incorrect belief that the increased costs to carriers for pre-October 1, 2013 claims were already taken into account in the calculation of those premiums.

■ Plaintiffs also established that the amendment, as applied retroactively, violates the Contract Clause of the US Constitution because it retroactively impairs an existing contractual obligation to provide insurance coverage "[w]here . . . the insurer does not have the right to terminate the policy or change the premium rate" (*Health Ins. Assn. of Am. v Harnett*, 44 NY2d 302, 313 [1978] [internal quotation marks omit-

ted]; *see* US Const, art I, § 10, cl 1). Defendants failed to show that the impairment is "reasonable and necessary to serve" "a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem" (*19th St. Assoc. v State of New York*, 79 NY2d 434, 443 [1992] [internal quotation marks omitted]). Indeed, the legislation's stated purpose of preventing a windfall to insurance carriers was based upon the erroneous premise that premiums already cover this new liability.

Retroactive application would also constitute a regulatory taking in violation of the Takings Clause (*see* US Const Amend V; NY Const, art I, § 7 [a]; *Eastern Enterprises*, 524 US at 528-529 ["it imposes severe retroactive liability on a limited class of parties that could not have anticipated the liability, and the extent of that liability is substantially disproportionate to the parties' experience"]).

Plaintiffs have therefore established that the amendment, as applied retroactively to policies issued before October 1, 2013, is unconstitutional.

As to defendants' assertion that should this Court find that the complaint states a cause of action, summary judgment should be denied due to the existence of "[n]umerous issues of fact," defendants neither opposed the cross motion nor established the existence of triable issues of fact precluding summary judgment. The issues of fact they now allege to exist are purely speculative, unsupported by reference to the record, and improperly raised for the first time on appeal. Defendants did not submit any evidence to contradict plaintiffs' evidence as to the economic impact of the Fund's closure on plaintiffs, or to support their claim that issues exist as to "the extent to which [plaintiffs] benefitted from other changes in the 2013 legislation," or the nature and value of such benefit.

Therefore, based on the record, plaintiffs established their entitlement to summary judgment on their claims for declaratory relief. However, plaintiffs' application for an injunction is denied, since "[w]hen [the] Court articulates the constitutional standards governing [S]tate action, we presume that the State will act accordingly" (*Matter of Maron v Silver*, 14 NY3d 230, 261 [2010]). The request in plaintiffs' briefs for an award of attorneys' fees is denied, since plaintiffs advance no supporting argument for such relief in the main body of their briefs, and no reason for such an award is apparent.

Accordingly, the judgment of the Supreme Court, New York County (Donna M. Mills, J.), entered September 29, 2014,

dismissing the complaint, should be reversed, on the law, without costs, the complaint reinstated, and a judgment entered in favor of plaintiffs declaring that Workers' Compensation Law § 25-a (1-a) as retroactively applied to policies issued before October 1, 2013 is unconstitutional. The Clerk is directed to enter an amended judgment accordingly. The appeal from the order of the same court and Justice, entered August 20, 2014, which granted defendants' motion to dismiss the complaint and denied plaintiffs' cross motion for summary judgment, should be dismissed, without costs, as subsumed in the appeal from the judgment.

MAZZARELLI, J.P., RENWICK and MOSKOWITZ, JJ., concur.

Judgment Supreme Court, New York County, entered September 29, 2014, reversed, on the law, without costs, the complaint reinstated, and a judgment entered in favor of plaintiffs declaring that Workers' Compensation Law § 25-a (1-a) as retroactively applied to policies issued before October 1, 2013 is unconstitutional. The Clerk is directed to enter an amended judgment accordingly. Appeal from order, same court, entered August 20, 2014, dismissed, without costs, as subsumed in the appeal from the judgment.